UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 20-22929-Civ-WILLIAMS/TORRES

TRAINING FIRST FOR LIFE CORP.
d/b/a US1 Fitness Center,

    Plaintiff,

v.

OHIO SECURITY INSURANCE CO.,

    Defendant.

_____/

**REPORT AND RECOMMENDATION
ON PLAINTIFF'S MOTION TO REMAND**

This matter is before the Court on Training First for Life Corp. d/b/a US 1 Fitness's ("Plaintiff") motion to remand this action to Florida state court. [D.E. 20]. Ohio Security Insurance Co. ("Defendant") responded to Plaintiff's motion on December 30, 2020 [D.E. 23] to which Plaintiff replied on January 6, 2021. [D.E. 25]. Therefore, Plaintiff's motion is now ripe for disposition. After careful consideration of the motion, response, reply, relevant authorities, and for the reasons discussed below, Plaintiff's motion to remand should be **GRANTED**.[1]

---

[1] On January 4, 2021, the Honorable Kathleen Williams referred Plaintiff's motion to remand to the undersigned Magistrate Judge for disposition. [D.E. 24].

1

## *I. BACKGROUND*

Plaintiff is a business located at 12860 Biscayne Boulevard in North Miami, Florida that operates a workout gymnasium. [D.E. 1-7 at ¶ 6]. In March 2020, state and federal officials ordered the shutdown of nonessential businesses across the country, including South Florida, because of the COVID-19 pandemic. *Id.* at ¶¶ 9-11. Plaintiff's involuntary closure took place on March 19, 2020 but, prior to that date, Plaintiff purchased an insurance policy that protected the business from certain interruptions. The policy contained language that, regardless of when a claim is made, Defendant will only pay up to 60 consecutive days from the date operations are suspended. *Id.* at ¶ 19.

On April 23, 2020, Plaintiff served Defendant with a demand letter and a report from a certified public accountant ("CPA"), seeking damages. Defendant denied Plaintiff's demand because any suspension must be caused by direct physical loss or damage to the property, neither of which Plaintiff had alleged:

> The policy provides Business Income coverage when there is a suspension of your operations at the described premises. The suspension must be caused by direct physical loss of or damage to the property at the described premises and results from a covered cause of loss. The Civil Authority Additional Coverage is only applicable when access to the described premises is prohibited when there is direct physical damage to other property, not on the described premises, from a covered cause of loss. The issuing of the order by the Miami-Dade County, Florida to close all non-essential businesses was not due to physical loss or damage at your premises nor did it prohibit access to the described premises. It was issued to limit the spread of Coronavirus (COVID-19). The policy specifically excludes losses caused by or resulting from a virus and from contamination.

*Id.* at ¶ 23.

Plaintiff subsequently filed this action in Florida state court for breach of contract, declaratory judgment, and bad faith. Defendant removed this case to federal court on July 16, 2020, invoking the Court's diversity jurisdiction. [D.E. 1]. Plaintiff seeks to remand this action because the amount in controversy falls below $75,000, exclusive of interest and costs.[2] Therefore, Plaintiff filed a motion to remand on December 16, 2020 that is now ripe for disposition. [D.E. 20].

## II. APPLICABLE PRINCIPLES AND LAW

Federal courts are courts of limited jurisdiction, meaning they only have the power to provide a forum for some, not all, disputes. *See Morrison v. Allstate Indemnity Co.*, 228 F.3d 1255, 1260–61 (11th Cir. 2000) ("Federal courts have limited subject matter jurisdiction, or in other words, they have the power to decide only certain types of cases."). "A district court can hear a case only if it has at least one of three types of subject matter jurisdiction: (1) jurisdiction under specific statutory grant; (2) federal question jurisdiction pursuant to 28 U.S.C. § 1331; or (3) diversity jurisdiction pursuant to 28 U.S.C. § 1332(a)." *Thermoset Corp. v. Bldg. Materials Corp. of Am.*, 849 F.3d 1313, 1317 (11th Cir. 2017) (citations and internal quotations omitted). "A federal court not only has the power but also the obligation at any time to inquire into jurisdiction whenever the possibility that jurisdiction does not exist arises." *Johansen v. Combustion Eng'g, Inc.*, 170 F.3d 1320, 1328 n.4 (11th Cir. 1999). "If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action." Fed. R. Civ. P.

---

[2] Plaintiff is a citizen of Florida and Defendant is a citizen of New Hampshire and Massachusetts.

3

12(h)(3); *see also Beavers v. A.O. Smith Elec. Prods. Co.*, 265 F. App'x 772, 777 (11th Cir. 2008) (citations omitted).

"The plaintiff is the master of his complaint and is free to choose federal or state jurisdiction." *Morock v. Chautauqua Airlines, Inc.*, 2007 WL 1725232, at *1 (M.D. Fla. June 14, 2007) (citing *Caterpillar, Inc. v. Williams,* 482 U.S. 386, 392 (1987)). A defendant may remove a case from a state to federal court pursuant to 28 U.S.C. § 1441. If a defendant decides to do so, the defendant bears the burden of putting forth sufficient facts supporting the existence of federal jurisdiction. *See McCormick v. Aderholt,* 293 F.3d 1254, 1257 (11th Cir. 2002); *Triggs v. John Crump Toyota, Inc.,* 154 F.3d 1284, 1287 n.4 (11th Cir. 1998). A federal court must determine whether it has subject matter jurisdition at the time a removal notice is filed. *See Poore v. American-Amicable Life Ins. Co., Inc.,* 218 F.3d 1287, 1290-1291 (11th Cir. 2000).

If a case is removed on the basis of section 1332(a), there must be (1) complete diversity between the parties and (2) there must be an amount in controversy that exceeds $75,000. *See* 28 U.S.C. § 1332(a) ("The district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs"); *see also Matrix Z, LLC v. Landplan Design, Inc.*, 493 F. Supp. 2d 1242, 1245 (S.D. Fla. 2007). In meeting the burden of establishing the amount in controversy, the removing defendant must establish by "'[t]he greater weight of the evidence, . . . [a] superior evidentiary weight that, though not sufficient to free the mind wholly from all reasonable doubt,

4

is still sufficient to incline a fair and impartial mind to one side of the issue rather than the other.'" *Lowery v. Alabama Power Co.,* 483 F.3d 1184, 1209 (11th Cir. 2007) (quoting *Black's Law Dictionary* 1220 (8th ed. 2004)). If the removing defendant fails to do so, the court must remand the case back to state court because removal statutes are narrowly construed with uncertainties resolved in favor of remand. *See Whitt v. Sherman Int'l Corp.,* 147 F.3d 1325, 1329 (11th Cir. 1998); *see also Morock*, 2007 WL 1725232, at *1 ("A federal district court must remand to state court any case [that] lacks necessary jurisdiction or that was removed improperly.") (citing *Burns v. Windsor Ins. Co.,* 31 F.3d 1092, 1095 (11th Cir. 1994)).

"[I]n the removal context where damages are unspecified, the removing party bears the burden of establishing the jurisdictional amount by a preponderance of the evidence." *Lowery*, 483 F.3d at 1208-09 (citing *Tapscott v. MS Dealer Serv. Corp.,* 77 F.3d 1353, 1356–57 (11th Cir. 1996) (adopting the "preponderance of the evidence" standard after examining the various burdens of proof in different factual contexts), *overruled on other grounds, Cohen v. Office Depot, Inc.,* 204 F.3d 1069, 1072 (11th Cir. 2000)); *see also Abrego Abrego v. The Dow Chem. Co.*, 443 F.3d 676, 683 (9th Cir. 2006) ("Where the complaint does not specify the amount of damages sought, the removing defendant must prove by a preponderance of the evidence that the amount in controversy requirement has been met."). Stated differently, a removing defendant must prove that the amount in controversy "'more likely than not'" exceeds $75,000. *See Morock*, 2007 WL 1725232, at *2 (citing *Hanna v. Miller,* 163 F. Supp. 2d 1302 (D.N.M. 2001)). If the evidence presented "is insufficient to

establish that removal was proper or that jurisdiction was present, neither the defendants nor the court may speculate in an attempt to make up for the notice's failings. The absence of factual allegations pertinent to the existence of jurisdiction is dispositive and, in such absence, the existence of jurisdiction should not be divined by looking to the stars." *Lowery*, 483 F.3d at 1214-15 (footnote and citation omitted).

### III. ANALYSIS

Plaintiff argues that this case should be remanded because there is insufficient evidence that $75,000 dollars is in controversy between the parties.[3] Plaintiff's primary issue with Defendant's removal is that the latter relies on a CPA report that estimated damages at approximately $295,735.72. [D.E. 1-6]. Plaintiff claims that Defendant's reliance is misplaced because – although Plaintiff served this report prior to the filing of this lawsuit – it reflects a *yearly* figure when the actual scope of the claim presented is only for a 60-day period. Plaintiff also casts doubt that the report can be relied on at all because it was only intended for negotiation purposes. Even worse, Plaintiff says that Defendant's own expert opined on December 14, 2020 that Plaintiff's damages are well below $75,000. Because all the evidence presented shows that this case is nowhere near the

---

[3] There is no dispute that the parties are citizens of different states, meaning the Court's diversity jurisdiction turns solely on whether the amount in controversy exceeds $75,000 dollars. Plaintiff has also not alleged a specific amount in damages. Rather, Plaintiff claims that this is an action that exceeds $30,000 dollars so the Court must look beyond the face of the complaint to determine whether the amount in controversy exceeds the required threshold. [D.E. 1-1 at 1 ("This is an action for damages that exceeds thirty thousand dollars ($30,000), exclusive of interest, costs and fees.")].

$75,000 dollar threshold, Plaintiff concludes that this case should be remanded back to Florida state court.

We begin with the question of whether Defendant's expert report can be considered on a motion to remand. Plaintiff says yes because it shows that even Defendant's own expert believes that the amount in controversy is below $75,000 dollars.[4] While the report is favorable to remand, Plaintiff never explains why it should be considered in the first place if it was produced approximately five months after Defendant removed this case to federal court. Plaintiff sidestepped this issue entirely, most likely because "events occurring subsequent to the filing of the complaint have no bearing on the amount in controversy." *Magneto Aso, LLC v. Evanston Ins. Co.*, 2019 WL 7899221, at *2 (S.D. Fla. Mar. 26, 2019) (citing *The Burt Co. v. Clarendon Nat. Ins. Co.*, 385 F. App'x 892, 894 (11th Cir. 2010) (events occurring after removal, such as the post-removal amendment of a complaint to remove certain claims, which may reduce the damages recoverable below the amount in controversy requirement, do not divest the district court of jurisdiction).

Indeed, it is a well-settled principle that "diversity jurisdiction is determined at the time of removal." *Robert Roman v. Wal-Mart Stores East, LP & John Doe*, 2021 WL 252423, at *3 (M.D. Fla. Jan. 26, 2021) (citing *PTA-Fla., Inc. v. ZTE USA, Inc.*, 844 F.3d 1299, 1306 (11th Cir. 2016)). And "[i]f jurisdiction was proper on that date, subsequent events, even the loss of the required amount in controversy, will

---

[4] The expert estimated that Plaintiff's lost business income was approximately $24,998 based on a damages period from March 22, 2020 through April 11, 2020. [D.E. 25 at 13].

7

not operate to divest the court of jurisdiction." *Leonard v. Enterprise Rent a Car,* 279 F.3d 967, 972 (11th Cir. 2002) (citation omitted). So, given that "[a] court's analysis of the amount-in-controversy requirement focuses on how much is in controversy at the time of removal, not later," the expert report cannot be considered in determining federal jurisdiction. *See Pretka v. Kolter City Plaza II, Inc.*, 608 F.3d 744, 751 (11th Cir. 2010) (citing cases).[5]

The next question is whether the accounting report that was attached to Plaintiff's demand letter can be considered in determining the amount in controversy. Courts have found that a removing defendant can meet its burden using a pre-suit estimate when (1) the document reflects an "honest assessment of damages," and (2) the plaintiff does not contest the "veracity of the information" contained in the document despite having an opportunity to do so. *Katz v. J.C. Penney Corp.*, 2009 WL 1532129, at *5 (S.D. Fla. June 1, 2009); *see also AAA Abachman Enterprises, Inc. v. Stanley Steemer International, Inc.*, 268 F. App'x 864, 865-66 (11th Cir. 2008) (concluding that the amount in controversy requirement was satisfied based on the plaintiffs pre-suit demand letter that sought "hundreds of thousands of dollars," and observing that the plaintiff "had the opportunity to submit evidence that the value of the rights was $75,000 or less in conjunction with its motion for remand to state court but did not do so.").

---

[5]     The exception to this rule is that a district court may consider evidence submitted after a removal petition is filed "but only to establish the facts present at the time of removal." *Sierminski v. Transouth Fin. Corp.*, 216 F.3d 945, 946 (11th Cir. 2000). The exception does not apply here because Defendant's expert is not establishing any facts but an opinion on how to calculate damages.

This is significant to understand because settlement offers do not automatically establish the amount in controversy for purposes of diversity jurisdiction. Instead, courts analyze whether demand letters merely "reflect puffing and posturing," or whether they provide "specific information to support the plaintiff's claim for damages" and thus offer a "reasonable assessment of the value of [the] claim." *Jackson v. Select Portfolio Servicing, Inc.,* 651 F. Supp. 2d 1279, 1281 (S.D. Ala. 2009) (quotations omitted); *see also, e.g., Golden v. Dodge–Markham Co.,* 1 F. Supp. 2d 1360 (M.D. Fla. 1998) ("Defendant has not persuaded this Court that Plaintiff's settlement demand was an honest assessment of damages."); *Standridge v. Wal–Mart Stores,* 945 F. Supp. 252, 256 (N.D. Ga. 1996) (holding that a pre-suit demand letter was "nothing more than posturing by plaintiff's counsel for settlement purposes and cannot be considered a reliable indicator of the damages plaintiff is seeking").

Here, the demand letter states that the alleged business income losses was approximately $295,000:

> The financial damages, or business income losses here, are rather simple to calculate given that this is gym with steady membership fees. A report attached hereto, produced by an accountant, shows that applicable losses here amount to some $295,735.72. We are attaching bank statements and tax returns to show how this was calculated.

[D.E. 23-1]. Defendant says that the letter and accounting report reflect an honest assessment of damages because it incorporates Plaintiff's bank statements, tax returns, and membership fees to calculate an alleged loss. Defendant also contends that a fair reading of the complaint shows that this amount is reasonable because

9

Plaintiff's business has been shut down since March 2020 with no timetable on reopening.

There are several problems with Defendant's argument. The most noticeable is that the accounting report that Plaintiff attached to its demand letter calculated damages over a 12-month period. [D.E. 1-6]. The report estimates damages for each month, ranging from January to December 2019 and, after adding up all those amounts, the total is approximately $295,000 dollars. This is obviously not the actual amount in controversy because Plaintiff's business was in operation until March 19, 2020. It is therefore unclear how Defendant can say that this report represents an "honest and reasonable assessment of the claimed damages," when some of the amounts predate the closure of Plaintiff's business. [D.E. 23 at 1]. This reduces, for example, the $26,000 in damages for February and a sizable portion of the $68,000 damages for March.

Putting aside that problem, the report is also not an accurate representation of Plaintiff's damages because the complaint only seeks payment for 60 consecutive days of business loss income. [1-1 at ¶ 21 ("[I]t is clear that from the evidence and transparent language in the POLICY, that 60 consecutive days of Business Income Loss, should be covered for suspension of business due to bacteria or virus.")]. The complaint also references the underlying insurance policy, acknowledging that damages are only recoverable for this specific time period:

> Regardless of when, during the policy period, the report is made, we will only pay for Business Income loss sustained or Extra Expense incurred in a period up to 60 consecutive days, or the revised number

10

> of days shown in the Schedule, from the date operations are suspended as a result of the discovery of "fungus", wet rot, dry rot or bacteria.

*Id.* at ¶ 19. So, if Plaintiff concedes that damages are only recoverable for a 60-day period, it is uncertain how Defendant can say that $295,000 in damages over a 12-month period is an honest reflection of the amount in controversy. That is clearly incorrect with the only reasonable inference that can be taken from this report is that it constitutes mere puffery and therefore insufficient to be a reliable indicator of the amount in controversy. *Standridge v. Wal–Mart Stores, Inc.*, 945 F. Supp. 252, 256 (N.D. Ga. 1996) (noting that pre-suit demand letter was "nothing more than posturing by plaintiff's counsel for settlement purposes and cannot be considered a reliable indicator of the damages plaintiff is seeking").

The final question, despite the problems already identified, is how to estimate Plaintiff's damages with the limited information presented. If the Court takes any 60-day period in the CPA report, the alleged damages are sometimes well above $75,000 and other times below that threshold. Take, for instance, the alleged damages for June ($35,457.28) and July 2019 ($32,441.81). If this was the 60-day period that Plaintiff seeks relief for then the damages fall short of the $75,000 threshold. On the other hand, if the damages for April ($47,682.51) and May 2019 (60,889.74) are totaled then that sum is well above $75,000. Neither party offers any other way of measuring Plaintiff's damages even though the Court may consider a wide range of evidence where, as here, the complaint alleges an unspecified amount in damages. *DO Rests., Inc. v. Aspen Specialty Ins. Co.*, 984 F. Supp. 2d 1342, 1344 (S.D. Fla. 2013) ("Where, as in this case, the complaint alleges

11

an unspecified amount of damages, 'the district court is not bound by the plaintiff's representations regarding its claim,' and may review the record for evidence relevant to the amount in controversy.") (citing *Roe v. Michelin N. Am., Inc.*, 613 F.3d 1058, 1061 (11th Cir. 2010)). Indeed, neither party supported their arguments with any "affidavits, declarations, or other documentation," leaving the Court with no alternative method of determining the amount in controversy. *Pretka*, 608 F.3d at 755.

That brings us full circle because – with nothing else to rely on – it is unclear whether the amount in controversy exceeds $75,000 dollars. Both parties could be correct in estimating the alleged damages, but that depends on which 60-day period is chosen for that calculation. And we have no way of making that determination with the current record presented. There is also a lingering question of whether any of the figures in the CPA report can be relied on at all because it includes damages for months where Plaintiff's business remained in operation. Any calculation based on this report would be, in many respects, guesswork and that is the exact type of conduct that the Eleventh Circuit prohibits when determining an amount in controversy. *See, e.g., Lowery v. Alabama Power Co.*, 483 F.3d 1184, 1220 (11th Cir. 2007) (affirming remand because to determine the amount in controversy, "we would necessarily need to engage in impermissible speculation—evaluating without the benefit of any evidence the value of individual claims."). Because Defendant has fallen short of meeting its burden by a preponderance of the evidence that the amount in controversy is greater than $75,000 dollars, we have no

choice but to recommend that Plaintiff's motion be **GRANTED** and that this case be remanded back to Florida state court. *See Roe v. Michelin N. Am., Inc.*, 613 F.3d 1058, 1062 (11th Cir. 2010) ("[W]hen the complaint omits a specific allegation as to the damage amount, 'the removing defendant must prove by a preponderance of the evidence that the amount in controversy is adequate.'") (citing *Felton v. Greyhound Lines, Inc.,* 324 F.3d 771, 773 (5th Cir. 2003)).[6]

## IV. CONCLUSION

For the foregoing reasons, the Court **RECOMMENDS** that Plaintiff's motion be **GRANTED** and that this case be remanded back to Florida state court.

Pursuant to Local Magistrate Rule 4(b) and Fed. R. Civ. P. 73, the parties have fourteen (14) days from service of this Report and Recommendation within which to file written objections, if any, with the District Judge. Failure to timely file objections shall bar the parties from *de novo* determination by the District Judge of any factual or legal issue covered in the Report *and* shall bar the parties from challenging on appeal the District Judge's Order based on any unobjected-to factual or legal conclusions included in the Report. 28 U.S.C. § 636(b)(1); 11th Cir. Rule 3-1; *see, e.g., Patton v. Rowell,* 2017 WL 443634 (11th Cir. Feb. 2, 2017); *Cooley v. Commissioner of Social Security,* 2016 WL 7321208 (11th Cir. Dec. 16, 2016).

---

[6] Although fees in insurance cases are allowed when calculating the amount in controversy, Defendant never made an argument to that effect nor did it attach any record evidence for the Court to consider.

13

**DONE AND SUBMITTED** in Chambers at Miami, Florida, this 4th day of February, 2021.

/s/ *Edwin G. Torres*
EDWIN G. TORRES
United States Magistrate Judge